Thank you, Your Honor. May it please the Court, my name is John Seidlitz. I want to thank you for scheduling me so I could be out and present argument for both of these clients. Jodi Pierce is an individual who suffers from mental limitations. She was relatively young, about 37, when she applies for disability back in May of 2008. She has a decision in May of 2010. I was not the attorney in the underlying case. I'm relying purely on the transcripts in terms of what's happened. After a hearing, the Administrative Law Judge denied benefits. The Administrative Law Judge, while he found that she hadn't been working, focused on the issues of her mental limitations and found that the record before him included mostly treatment by LCPC. Ms. Pierce was a low-income individual. She qualified in eastern Montana at the time. He focused on the fact that the counselor found that she had all these severe limitations which were only available in his records and if those Were they really rejected counselor or were they given less weight? Well, I think when you get to the point of the weight the judge gave them, they were rejected. He had other reasons, right? He had other reasons. The checkbox without further explanation, for example. It wasn't just that Dove hadn't referred her for additional treatment, was it? I think that's the major one, was the lack of referral. Because the form that was filled out was not a one-page form that Timothy Dove filled out. I think it was 30 pages, 20 pages, where he went through and made detailed notes about them. Not only detailed notes, but detailed findings. He didn't just say, well, she can't work or her limitations will preclude some type of full-time work. He said she's going to have the inability to adhere to the basic standards of neatness and cleanliness. That's more than just checking a box. It's a finding that's relatively specific. Nothing in the record to indicate she had those So, how does that get rejected? And that certainly would be a limitation that would have precluded her ability to perform SGA. She's going to be unable to deal with normal stress, and the most important one was the inability to work uninterrupted throughout the course of a day. Those were really detailed findings in terms of what they are. In terms of why they're rejected, one of the reasons is, and I think it's a significant one, is he sees her for two years. He'd actually seen her a couple of years before, but that's before the relevant time frame. But he sees her for two years and he Well, the only medical records we have available are emergency room records when she would really suffer from problems and require a short stay at the hospital. Can you find those corroborative? I think, well, yes. I think they're corroborative, but I think what's important is there's nothing in there to indicate that she had a history prior to the need that was contrary to the findings of Timothy Dove. In other words, the history on presentation at the emergency room or at the hospital don't show she was doing fine, she's living her life, she's going about normal activities until this event happened and she spirals out of control and ends up here. Of course, we're looking for substantial evidence, right? Whether the ALJ's decision lacks substantial evidence. Well, you're looking for germane reasons to reject Timothy Dove's opinion. We just talked about those, right? The checkbox and whether or not they're corroborative. Whether or not other records were corroborative. Other medicals were corroborative. Uh-huh. Or whether they, what the judge found was whether they lacked support in the records. So, I don't know what that means because there's no records that don't in fact medical records that don't show she was having significant problems. Then the next reason he gave was the opinion was inconsistent with the reviewing medical records, the reviewing medical person. The reviewing medical person is simply looking at the records we're talking about now that you can look at. And so, that's kind of the same argument. The last thing he said was there was a medical expert at the hearing and that Counselor Dove's opinions were inconsistent with that medical expert. That medical expert determined at the time of the hearing that she rejected all the treating physicians who had found she had bipolar and said, I don't believe she has bipolar. An anxiety disorder, I think, or something. It could be attributed to an anxiety disorder. Right. And so, what about that? Well, I think when you're going to reject the counselor in this circumstance, the only person this person has available for treatment because of her indigency, then those germane reasons need to be specific. And you can't say, well, the testifying medical expert didn't find you credible when that expert rejected the medical diagnosis. Of the treating physicians. And so, in terms of the rules the court set out in terms of rejecting treating physicians, she didn't have any evidence of her own. So, your argument isn't really that Dove's opinions weren't given proper or rejected. You keep using that verb, but it seems to me that what you're telling me is that under these circumstances, that improper weight was given to his opinion because he's the one who treated her. I think so. I think in terms of the weight, if you're going to do what the ALJ did and say, you know, I think in terms of those limitations, you've gone a little overboard or your records don't support those. The ALJ is required, as they would for a lay person, because that's the rules for a counselor, the rules for lay people, you've got to have germane reasons. There's got to be something there. And in terms of germane reasons, I don't know, and I guess maybe that's what we'll find out from the court, if a medical expert who says, I'm going to reject all the treating physician's opinions, and by the way, you don't need to listen to Counselor Dove because I don't think his opinions hold weight, is that a germane reason? When that expert has been forced to say, I'm going to reject everybody, including the treating physician, and that's what the ALJ is relying upon to ignore Counselor Dove. Counsel, do you want to reserve two minutes? I would appreciate that. Thank you. To apply in light of the government's position. Okay, Mr. Howard. Good morning, Your Honors. Michael Howard for the Commissioner. Your Honors, this is a disability claimant who essentially wants it both ways. She studies and takes college classes, earns a B average, and hopes to be a medical transcriptionist, and she even asked her physician's assistant who treated her to write a letter to her college saying that she was very effectively treated and stable. But in the meantime, while working on that career endeavor, she asked her mental health counselor to give an opinion that essentially her treatment was completely ineffective and she had these debilitating limitations. So in a nutshell, her claim for disability is simply not credible. There's, of course, the two issues in the case, the issue of the counselor's opinion, Mr. Dove, and plaintiff's credibility. I'd like to address each of those in turn and hopefully touch on some of the Court's questions. On the issue of Mr. Dove's opinion, I think as set forth in the briefs, our position is that Mr. Dove made specific claims in his report that was submitted that are simply unsubstantiated. And we can look at very specific aspects of his claims and how they are not supported by clinical findings. For instance, he claims Ms. Pierce has memory difficulties, and this is something that Ms. Pierce testified to at the hearing. She even said that her memory difficulties were getting worse. Well, is that substantiated by any objective evidence at all? Simply it is not. After her car accident in 2008, she went through a short course of speech therapy, and on discharge they noted that she was having excellent memory on their tests, even when distracted. Counsel, is opposing counsel right that if her testimony is credited, she has to receive benefit? Because I'm getting ready to ask you, where did the ALJ make specific cogent credibility findings? Well, Your Honor, they've... To me, that's the case. That's what I need to know. I don't see it. Oh, well, certainly, Your Honor, I would be happy to get the page of the decision. I mean, to answer Your Honor's first question about what the result of crediting this testimony is, that would be, in a sense, that would be a difficult question for me, because in filing disability... That's why I asked it, counsel. ...you're disabled. That's why I asked it. I mean, I would... Isn't that what this case hinges upon? Isn't that what this case hinges upon? The plaintiff's credibility? Uh-huh. I think that's a crucial issue, and I'd be happy to talk about some of those reasons. And they are set forth in our brief, and the ALJ did make explicit credibility findings. The main general credibility finding is at page 24 of the record, and we look at several points of the decision. The ALJ is discussing these, and the ALJ doesn't necessarily provide a clean bullet point list, but they are very apparent and plain in the decision. Because your brief reads as though you're citing to the commissioner, but not really to the ALJ. But I'm listening. I'm on page 24. Certainly, Your Honor. Well, the ALJ does cite several factors throughout the decision, and we do refer to these in the brief, and I believe our brief does cite to the ALJ's decision. I apologize if that was not being done. But, for instance, the first factor here on page 24 that's at the very top of the page is this issue of inconsistent statements about drug and alcohol use. And I think this is a very clear and very persuasive reason. Of course, we only have to meet the substantial evidence standard, as Your Honor pointed out earlier. But this is really going to the very simple question here under credibility. Is this individual a reliable witness? Well, this is someone who the ALJ had every reason to believe that the administrative hearing under oath, she misrepresented. I'm sorry, where are you on page 24? The first paragraph of page 24, the ALJ, this is one instance of the second, I think the third sentence in the first paragraph of page 24. This is one of the instances in the decision where the ALJ is talking about inconsistencies about drug and alcohol use. So he's sort of making an observation here. Yes, Your Honor. Well, and by the wording of it, despite the claimant's statements and the test word. I want to make sure I'm on the same page to use the right phrase. I'm looking. There's a carryover paragraph. Am I on the right? Yes, Your Honor. Well, because they're not indented, it would be a little hard for me to say for certain. But it's the top of, if you look at the page numbers on the top of the ALJ's decision, it would be page 10 to 14. Yeah, okay, and that's where I am. Okay, so what are you looking at? Are you looking at, you say, the first paragraph? Yes, Your Honor. On my copy of that, it's a carryover paragraph from page 9. Oh, well, I apologize if I'm not, if I wasn't very clear. But I'm speaking about the sentence there towards the very top of the page, despite the claimant's statements that she had been only looking at. Okay, okay. And this is, importantly, this is just one of several items of evidence the ALJ discusses and makes findings about through his decision. You're inferring an adverse credibility finding there, yes? Well, I think that would be an entirely fair reading of the ALJ's decision. Okay, so that sounds like a yes. Are there other places we should look where you're inferring an adverse credibility finding by the ALJ? Well, yes, Your Honor. There would be several other places in the decision. Page 25 of the, well, I'm sorry, first towards the bottom of page 24 of the decision. Okay. He's discussing missed or canceled multiple appointments during a certain time period, a lack of medical treatment. And why is that consistent with a finding of adverse credibility? Well, under agency regulations and the Ninth Circuit case law, the ALJ can consider inconsistent seeking of treatment. Right, except in this case, I appreciate that, and forgive me for interrupting. I'm just mindful of your time. It's just that in this case, we're talking about a person who's suffering from depression. So I didn't find that particularly persuasive unless there's more, something else I'm missing. Certainly, Your Honor. Well, I fully acknowledge there is, I'm forgetting the name of the case, but there is certainly a case, or more than one, where you cannot criticize someone who's mentally ill for maybe not seeking treatment fully. However, is that really the case under these circumstances? I would submit it is not. There are several items of evidence the ALJ discusses when talking about the lack of consistent treatment that fails to support a claim of disability. One of them is the canceled or missed appointments. And the record shows that at least on one of those occasions, the missed appointment was to go to her daughter's field trip. So it wasn't due to an episode of mania or depression. It was just to go on a field trip. But there are other items of evidence that certainly support this. The ALJ plainly discusses in the decision would be in Mr. Dove's, the counselor's treatment notes, when he does see Ms. Pierce, at the bottom of almost every one of his treatment notes, the last sentence is that Ms. Pierce continues to be appropriate for this level of treatment. And I think that's crucial. I think that's not an issue of, well, could Ms. Pierce afford to see a doctor outside of the state health care system? The issue is that her own treating counselor thought that she did not need more intensive treatment. And I think that's a crucial part of the evidence, part of the record, that the ALJ does discuss, plainly discuss in the decision. Okay. And it goes to credibility, because that's clearly what I'm concerned about, whether or not there are sufficiently specific findings of adverse credibility. Yes, Your Honor. And so that observation by Dove, Mr. Dove, is, I guess, your position is just inconsistent with her self-report. Yes, Your Honor. All right. And I would submit that is apparent when reading the ALJ's decision and discussing and weighing all the different medical evidence. And I would certainly, the ALJ, of course, did not provide a bullet list of here are my specific credibility reasons. But I would submit there's no requirement for the ALJ to be quite that specific. It very well might be helpful for judicial review. But ultimately the question is, are the ALJ's findings sufficiently specific to permit meaningful review? And in this case, I'd certainly submit they are. Okay. And the two things that you've pointed to just quickly are on page 24, inferring that, you know, despite her statements regarding drug use, she had this blood test that showed she's positive for opiates, and then this other discrepancy between Mr. Dove's description of her symptoms and her own. Is that right? Yes. Well, those are two of the factors, certainly. And if we look at just the following page, I mean, I would submit that these reasons are throughout the decision, but we look at just the following page, page 25. The ALJ is going on to discuss, I think, the third paragraph down, the first full paragraph that starts on that page, discussing the non-examining physicians. This is apparent that this is the evidence the ALJ is relying on this expert psychologist's evidence when looking at the record, and he's giving weight to these psychologists' opinions. And he's talking about the fact that these psychologists say that Ms. Pierce only has mild limitations in daily activity, and there's no episodes of decompensation of extended duration. And when we're reading this language with the understanding that the ALJ is thinking about has the agency's regulations in kind of the background of his mind, for instance, the Step 3 issues, which do look at daily activities or decompensation as specific requirements, or the issue of how the doctors complete their forms. These are just relevant items of evidence the ALJ is discussing when weighing the claimant's testimony. Okay, Counselor, I'm afraid your time is up. Oh, I apologize, Your Honor. That's okay. Unless one of the judges has a question, we'll ask you to wrap up. Thank you, Your Honor. I simply ask the Court affirm. Thank you. I'll try not to use my whole time here. I only have one small comment that I'd like, in terms of following up with the Court's questions and the ALJ's handling of Counselor Dove's opinions. In the reply brief at page 5, I pointed out the specifics in terms of the Counselor's opinions on various issues. He notes Jody demonstrated 35 of 56 limited signs and symptoms. So this isn't just a she's not going to be able to sit or she's not going to be able to take stress. He goes through in terms of the symptoms and says these are the ones she has. Then he goes on to say she's not going to meet competitive standards in 14 of 25 listed mental abilities and aptitudes, and she's limited in almost all the rest. And last, I think something that was not dealt with in terms of the credibility, and it's one of these issues about not having enough specificity in what parts of behavior the ALJ takes exception with in terms of credibility, was the opinion from Counselor Dove that he expected her to miss four days of work a month. And there's just nothing there unless we just say, look, this lady had a couple of times when she used medications and had emergency room visits, and so I don't have to listen to anything she tells her counselors. I don't think that's where we're at with the law. Thank you. Thank you, Counsel. We thank both Counsel for their fine arguments and also, again, for coming to visit us from so far away. So with that, Pierce v. Goldman shall be submitted.
judges: Fisher, Gould, Christen